# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOHEYL YOUSEFISAHI,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH B. EDLOW,<br><br>Defendant. | Case No. 25-cv-09728-LJC<br><br>**ORDER REGARDING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

## I. INTRODUCTION

Plaintiff Soheyl Yousefisahi brings this action against Defendant Joseph Edlow, Director of U.S. Citizenship and Immigration Services (USCIS), seeking a writ of mandamus or injunctive relief under the Administrative Procedures Act (APA) requiring Defendant to adjudicate Plaintiff's pending I-485 application to adjust status to permanent residence. Defendant moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The present Motion presents a single narrow argument: that a jurisdiction-stripping statute, 8 U.S.C. § 1252(a)(2)(B)(ii), bars federal courts from compelling USCIS to adjudicate I-485 applications. The Court held a hearing on April 30, 2026. For the reasons discussed below, Defendant's Motion to Dismiss is DENIED.[1]

## II. BACKGROUND

Plaintiff is a national of Iran who was granted asylum in the United States in 2023. Compl. ¶¶ 57–58. On February 9, 2024, Plaintiff submitted an I-485 application to adjust his status to that of a lawful permanent resident. *Id.* ¶ 2. USCIS acknowledged receipt of Plaintiff's application

---

[1] The parties have consented to proceed before a magistrate judge for all purposes under 28 U.S.C. § 636(c).

and the necessary fees totaling $1,225 on February 14, 2024. ECF No. 1-4. Plaintiff's case status was updated on February 19, 2024 to indicate that his fingerprints had been taken. ECF No. 1-5.

Plaintiff filed this action on November 12, 2025. *See generally* Compl. USCIS thereafter issued two policy memoranda placing a hold on adjudication of certain applications for immigration benefits:

> On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192 ("PM-0192"), with the subject line: "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." PM-0192 places an "adjudicative hold" on a wide range of pending requests for immigration benefits filed by aliens from a list of 19 countries including Iran. "This hold will remain in effect until lifted by the USCIS Director through a subsequent memorandum." USCIS issued a second Policy Memorandum on January 1, 2026 ("PM-0194"), with the subject line "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries," which stated that the guidance in PM-0192 remained in place and further explained that the "hold" on benefit applications "allows a case to proceed through processing, up to a final adjudication," *i.e.*, "the issuance of a final decision in a case, such as an approval, denial, or dismissal." PM-0194 at 1, 2, and n. 2.
>
> PM-0192 refers to an executive order ("EO 14161") issued by President Trump on January 20, 2025, the first day of his second term, entitled "Protecting the United States from Foreign Terrorist and Other National Security and Public Safety Threats." As characterized by PM-0192, EO14161 "underscores the importance of vigilance during the visa issuance process to ensure that individuals approved for admission into the United States do not intend to harm Americans or compromise U.S. national interests." PM-0192 also refers to Presidential Proclamation 10949 (the "Proclamation"), entitled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats," which was issued by President Trump on June 4, 2025. PM-0192 states that "[e]xercising authority under section 212(f) of the Immigration and Nationality Act ("INA"), the proclamation imposes restrictions, limitations, and exceptions on the entry of aliens from 19 high-risk countries." Iran is one of the 19 countries listed in the Proclamation.

*Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *1 (N.D. Cal. Feb. 20, 2026) (alteration in original) (footnote and record citations omitted) (error reproducing punctuation in internal quotation corrected); *see also* ECF No. 61-1 (PM-0192); ECF No. 16-2 (PM-0194).

While the present Motion was pending, USCIS scheduled Plaintiff's interview for April 29, 2026. ECF No. 23-1. The Court heard argument on this Motion the following day, and the

parties confirmed that the interview had occurred as scheduled. ECF No. 30.

## III. LEGAL STANDARD

Federal district courts have limited subject matter jurisdiction and may only hear cases falling within that jurisdiction. A defendant may move to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A challenge to subject matter jurisdiction may be facial of factual, with the former limited to review of the plaintiff's complaint, and the latter based on extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, though Defendant's Motion did not rely on extrinsic evidence, ECF No. 11, Plaintiff offered evidence with his opposition brief, ECF No. 16, and the parties later stipulated to submit additional evidence of Plaintiff's scheduled interview, ECF No. 23. The Court has therefore considered all relevant evidence in the record.

There is no dispute in this case that but for the jurisdiction-stripping statute on which Defendant relies, Plaintiff's claims would fall within the Court's subject matter jurisdiction based on 28 U.S.C. § 1331 (providing for jurisdiction over federal questions), 28 U.S.C. § 1361 (the mandamus statute), and/or 5 U.S.C. § 704 (the APA's provision for judicial review). The only question raised by the present Motion is whether Congress has revoked such jurisdiction through 8 U.S.C. § 1252(a)(2)(B)(ii).

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). When Congress carves out certain matters from the federal courts' otherwise-applicable jurisdiction, courts are "guided . . . by the general rule to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation, and by the strong presumption in favor of judicial review." *Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) (quoting *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (per curiam)) (internal quotation marks omitted). The Supreme Court has recognized "the 'presumption favoring interpretations of statutes [to] allow judicial review of administrative action,'" and that "[s]eparation-of-powers concerns, moreover, caution . . . against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (quoting *Reno v.*

*Catholic Social Servs., Inc.,* 509 U.S. 43, 63–64) (first alteration in original).  Still, when a jurisdiction-stripping "statute is clear, [courts] have no reason to resort to the presumption of reviewability."  *Patel v. Garland*, 596 U.S. 328, 347 (2022).

## IV.    ANALYSIS

Section 1242(a)(2)(B), titled "Denials of discretionary relief," provides the following limitations of judicial review:

> Notwithstanding any other provision of law ... and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).

Defendant's present Motion invokes only subpart (B)(ii).  ECF No. 11 at 4.

### A.    Challenges to USCIS Policies and Procedures

The Ninth Circuit has "conclude[d] that § 1252(a)(2)(B)(i) does not strip district courts of jurisdiction to hear collateral challenges to . . . generally applicable policies and procedures," as distinct from "individual application denials."  *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F.4th 995, 1003, 1009 (9th Cir. 2024).[2]  Even though that decision distinguished its interpretation of subpart (B)(i) from the language of subpart (B)(ii) at issue here, *id.* at 1006–07, and from other courts' interpretation of the latter, *id.* at 1016 n.20, Defendant conceded at the hearing in this case that *Nakka* applies to allow claims challenging broadly applicable *policies* that defer adjudication of I-485 applications to adjust status.  *See also Varniab*, 2026 WL 485490, at *6–7 (applying

---

[2] The Ninth Circuit ultimately held that the district court lacked jurisdiction over the claims at issue in that case for other reasons: "most of the named plaintiffs' claims are not ripe because they have not applied for adjustment of status and USCIS has not denied their applications based on the challenged policies," and the one plaintiff whose application had been denied was required to follow a different statutory channel for review."  *Nakka*, 111 F4th at 999.

United States District Court
Northern District of California

United States District Court
Northern District of California

*Nakka* to conclude that the court had jurisdiction to consider a challenge to PM-0192's hold on I-485 applications).

Defendant contends that *Nakka* is nevertheless of no use to Plaintiff here, because unlike in Judge van Keulen's *Varniab* case, Plaintiff's Complaint does not specifically challenge PM-0192 or PM-0194, both of which were issued after Plaintiff brought this action. ECF No. 18 at 5. Defendant is of course correct that Plaintiff's Complaint does not mention policy memoranda that did not exist when it was filed, though it addresses other alleged systemic sources of delay in a manner that could perhaps be construed as a challenge to "generally applicable policies and procedures" within the meaning of *Nakka*. *See* ECF No. 1, ¶¶ 127–20. Plaintiff also might be able to amend his Complaint to challenge the policy memoranda specifically, as in *Varniab*. The Court need not reach those questions or require amendment, however, because regardless of whether Plaintiff challenges a policy or procedure, Plaintiff's claim for unreasonable delay does not implicate the sort of discretionary decisions that § 1252(a)(2)(B)(ii) insulates from review.

### B.      Discretion Regarding Delay in Adjudication

Courts in this district have for many years "unanimous[ly]" held that USCIS has a non-discretionary duty to adjudicate I-485 applications that is enforceable notwithstanding § 1252(a)(2)(B)(ii). *See Varniab*, 2026 WL 485490, at *9 (quoting *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1257 (W.D. Wash. 2008) (surveying Northern District of California authority); and citing *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1163 (N.D. Cal. 2007)).

Judge van Keulen addressed and reaffirmed that conclusion in several recent thoughtful decisions: not only *Varniab*, which is arguably distinguishable based on the plaintiff's express challenge to USCIS's recent policy memoranda, but also in subsequent cases that simply alleged unreasonable delay in adjudicating I-485 applications without challenging a broader policy. *Gao v. Mullin*, No. 25-cv-01479-SVK, 2026 WL 948665, at *2–5 & n.2 (N.D. Cal. Apr. 8, 2026) (explaining in footnote 2 that the same outcome was appropriate even in the absence of a challenge to agency policy); *Wang v. Edlow*, No. 25-cv-10689-SVK, 2026 WL 1021204, at *3 (N.D. Cal. Apr. 15, 2026) (applying *Gao* and addressing additional arguments by the Government); *Narayan v. Edlow*, No. 25-cv-11000-SVK, 2026 WL 1050227, at *1 (N.D. Cal.

Apr. 16, 2026) (adopting the reasoning of *Gao* with little further discussion).[3]

The Court adopts the reasoning of those decisions in their entirety, including but not limited to the following key points:

- USCIS's duty to adjudicate applications—as distinct from discretion in *how* to adjudicate, i.e., whether to grant or deny—finds support in a regulatory provision mandating that "[t]he applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added); *see Varniab*, 2026 WL 485490, at *11; *see also Singh v. Still*, 470 F. Supp. 2d 1064, 1067 n.6 (N.D. Cal. 2007).

- The precedential decisions in *Patel*, 596 U.S. 328, and *Zia v. Garland*, 112 F.4th 1194 (9th Cir. 2024), did not address pace-of-review claims for applications that have not yet been resolved. "Those cases 'each involved the question of whether courts have jurisdiction to review factual findings and other preliminary decisions made in connection with final decisions on individual applications for immigration benefits.'" *Gao*, 2026 WL 948665, at *3 (quoting *Varniab*, 2026 WL 485490, at *6).

- Out-of-circuit cases like *Kale v. Alfonso-Royals*, 139 F.4th 329 (4th Cir. 2025), that declined to review "visa retrogression" holds are distinguishable from pace-of-adjudication claims more generally, in part because such holds are specifically supported by regulation, and in part because the "condition precedent" of a visa becoming available is more definite and concrete than the current policy memoranda's vague anticipation of enhanced vetting procedures. *Varniab*, 2026 WL 485490, at *7–8. District court decisions like *Khachutorov v. Britten*, 792 F. Supp. 3d 1106 (C.D. Cal. 2025), that have applied those cases in this context are

---

[3] *See also, e.g.*, *Bowser v. Noem*, No. 26-cv-10382-AK, 2026 WL 555624, at *3 (D. Mass. Feb. 27, 2026) (following *Varniab* to hold that § 1252(a)(2)(B)(ii) does not strip jurisdiction for claims of unreasonable delay in adjudicating I-485 applications); *Komma v. Edlow*, No. 2:25-cv-3702 DJC AC PS, 2026 WL 1113887, at *3 (E.D. Cal. Apr. 24, 2026) (following *Gao* and older cases in accord).

not persuasive. *Gao*, 2026 WL 948665, at *4–5.

- The Government has not identified any statute or regulation specifically conferring discretion with respect to the pace of adjudication of I-485 applications, *Varniab*, 2026 WL 485490, at *9–10, much less discretion for unreasonable delay.

There is little need to add to Judge van Keulen's treatment of this issue, and this Order will not belabor the points she addressed. This Court adds only the following thoughts on the significance of pace-of-adjudication claims as distinct from other aspects of the administrative process.

Defendant's basic duty to resolve Plaintiff's application is not in dispute. Even though "the substance of [USCIS's] decision is discretionary, [it] does not have discretion to decide not to adjudicate at all." *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. 2007). Defense counsel conceded at the hearing in this case that Defendant has a non-discretionary obligation to adjudicate I-485 applications to adjust status. The Government has long acknowledged that duty. *See Singh*, 470 F. Supp. 2d at 1067 (noting the same concession at a hearing in 2007).

Defendant contends that despite that underlying duty to adjudicate, the substantive and procedural decisions Defendant makes in doing so are discretionary. Many of them likely are, and thus fall outside the scope of judicial review. *See Zia*, 112 F.4th at 1200 (holding that "§ 1252(a)(2)(B)(i) applies to *all* aspects of the BIA's decision regardless of whether the underlying determinations are characterized as discretionary or factual"). The overall pace of adjudication, however, is different. For one thing, it is not an "aspect of [the Government's] decision," *see id.*, because no decision has been made. It is also inextricably intertwined with Defendant's ultimate duty to resolve the application in a way that other aspects of the adjudicatory process are not.

"A well-known saying, generally attributable to William Gladstone, is that 'Justice delayed is justice denied.'" *Grewal v. Jammu*, 191 Cal. App. 4th 977, 999 (2011). That may not always be true—the judicial system also rests on the premise that a thorough, deliberative process of litigation, which includes levels of appellate review, can result in some measure of justice, even if it is long awaited. To quote another adage with older roots, "The wheels of justice turn slowly but

United States District Court
Northern District of California

7

grind exceedingly fine." *Louisiana v. Becerra*, No. 3:21-cv-03970, 2022 WL 495043, at *1 & n.1 (W.D. La. Jan. 18, 2022) (citing an ancient Greek philosopher for an earlier version of that saying).

Anything delayed *indefinitely*, however, at some point becomes indistinguishable from being denied. Affording USCIS non-reviewable discretion to set the pace of adjudication, including but not limited to imposing indefinite hold policies, would vitiate any obligation to adjudicate applications at all. Thus, an agency's duty may become illusory if it is not time bounded in some manner.

In the context of administrative law, Congress recognizes the necessity of *timely* decisions by requiring an agency to "within a reasonable time . . . proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).[4] The APA thus authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.A. § 706(1). Such relief is important in the specific context of this case, because the "inability to obtain permanent residence status affects a wide range of important rights, including but not limited to travel, and the ability to petition to immigrate close family members," as well as the ability to seek citizenship and its attendant rights and privileges. *Singh*, 470 F. Supp.2d at 1070. A rule that blocks judicial review of indefinite delays by USCIS in adjudicating applications for permanent residence risks undercutting Congress's other enactments that establish immigration benefits and rights that flow from legal permanent residence status. Taking into account the presumption of judicial review and narrow construction of jurisdiction-stripping statutes, *see Ibarra-Perez*, 154 F.4th at 995, the Court does not read the Immigration and Nationality Act's limitation of jurisdiction to review discretionary decisions as altering either the APA's non-discretionary requirement for timely adjudication or the Court's authority under the APA to compel action unreasonably delayed.

Other areas of law also address both the concern that indefinite delay can render a party's duty to fulfill its obligations illusory and the corresponding need for timely action. Contract law,

_____

[4] This APA provision states in full, "With due regard for the convenience and necessity of the parties or their representative and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. 555(b).

for example, generally provides that agreements that fail to specify a deadline require performance within a reasonable period of time, as some time bound is a necessary implication of a duty to act at all. *See, e.g.*, Cal. Civ. Code § 1657; *Ramsey v. Sheet Pile, L.L.C.*, 130 F.4th 193, 199 (5th Cir. 2025) (Texas law); *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 829 (7th Cir. 2020) (Illinois law); *Eden Isle Marina, Inc. v. United States*, 113 Fed. Cl. 372, 493 (2013) (federal government contracts); Restatement (2d) of Contracts, comment d. That guardrail against indefinite delay renders contractual duties meaningful. USCIS's undisputed mandatory duty under the Immigration and Nationality Act to adjudicate I-485 applications might similarly imply a duty to do so within a reasonable time even without reference to the APA's express requirement for timely agency action, though the Court need not reach that question to resolve the present Motion.

Even as USCIS has discretion in how exactly to sequence and consider adjudication of applications for immigration benefits, "this discretion does not excuse USCIS from its mandatory obligation to adjudicate . . . applications at some point. Thus, the discrete agency action of adjudicating . . . applications still falls within the ambit of the APA, which vests jurisdiction in the federal courts to review agency actions for 'unreasonable delay.'" *Pichkurova v. L.A. Asylum Off.*, No. 8:24-02811 ADS, 2025 WL 1723159, at *4 (C.D. Cal. May 7, 2025) (addressing asylum applications). The duty to complete adjudication within a reasonable time is mandatory, and therefore subject to judicial review notwithstanding § 1252(a)(2)(B)(ii), whether under the mandamus statute or under the APA.

### C. Plaintiff's Interview

Contrary to Defendant's arguments, Plaintiff's interview is not a clear indication that the application is proceeding towards adjudication. Even if it were, that would not alter the Court's jurisdiction.

The "hold" imposed by PM-0192 and PM-0194 "allows a case to proceed through processing, *up to final adjudication*." ECF No. 16-2 (PM-0194) at 1 n.2 (emphasis added). The hold therefore did not affect USCIS's ability to interview Plaintiff, but without some exception, it would prevent USCIS from adjudicating it. At the hearing, defense counsel asserted that now that

9

Plaintiff's interview has been completed, USCIS could—and likely would—exempt Plaintiff's application from the hold. Such a request based on "litigation or other extraordinary circumstances must receive approval from the USCIS Director or Deputy Director." *Id.* at 3. If based on an exemption for "aliens whose entry would serve a United States national interest," lifting the hold would "require[] approval from the headquarters of the adjudicative directorate or program office." *Id.* at 5 & n.16.

Regardless of how Plaintiff's application is or is not now proceeding, however, the Court has jurisdiction to hear Plaintiff's claim that Defendant has unreasonably delayed its adjudication. As defense counsel noted less than a week before the interview occurred, "it remains unclear at this point how long it will take to complete the necessary vetting and finalize the adjudication." ECF No. 28 at 3. Questions of whether the past and ongoing delay is reasonable, and whether or when an eventual decision is expected, go to the merits of Plaintiff's claims for unreasonable delay, not to the Court's jurisdiction. *See Wang v. Edlow*, 2026 WL 1021204, at *5 ("[W]hile the length that an application has been pending without any action may be cause for granting or denying a motion to dismiss on 12(b)(6) grounds . . . it does not change the Court's analysis as to subject matter jurisdiction.").

## V.  CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss is DENIED. Defendant is ORDERED to file an answer, file a motion for summary judgment, and produce a certified administrative record no later than June 1, 2026. *See* ECF No. 22 (noting the likelihood of an expedited deadline for summary judgment if the Motion to Dismiss were to be denied). Briefing from there will proceed in accordance with the Scheduling Order for Immigration Mandamus Case, with Plaintiff's opposition and cross-motion due thirty days after the filing of Defendant's

/ /

/ /

/ /

/ /

/ /

motion, Defendant's reply and opposition due fourteen days after the filing of Plaintiff's opposition, and Plaintiff's reply due fourteen days after that. *See* ECF No. 3.

**IT IS SO ORDERED.**

Dated: May 18, 2026

LISA J. CISNEROS
United States Magistrate Judge